IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MISCHLENE THOMPSON, | Civil No. 06-690-AA |
| Plaintiff, | OPINION AND ORDER |
| vs. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Bruce W. Brewer
Attorney At Law
419 5th Street
Oregon City, Oregon 97045
    Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Neil Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Jeffrey Baird
Special Assistant U.S. Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

    Claimant, Mischlene Thompson, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to

1   - OPINION AND ORDER

obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) disability benefits under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

**PROCEDURAL BACKGROUND**

Plaintiff protectively filed her application for DIB on January 14, 2003. Tr. 22. Her date last insured was December 31, 2001. Tr. 81. On June 6, 2005, after a hearing, the Administrative Law Judge (ALJ) found plaintiff disabled for a period of more than 12 months beginning July 1, 1997, through January 31, 2002. Tr. 23. This closed period of disability ended March 21, 2002. Tr. 29. On March 13, 2006, the Appeals Council denied plaintiff's request for review, tr. 8-10, making the ALJ's decision the final agency decision. See 20 C.F.R. §§ 404.981, 416.1481.

**STATEMENT OF THE FACTS**

Plaintiff was born May 28, 1969. She alleges disability beginning June 15, 1996, due to ulcerative colitis, fibromyalgia, sciatica, memory loss, migraine headaches, and fatigue. Tr. 22. During the hearing, plaintiff amended her alleged onset date of disability to January 1, 2000. Her last date insured was December 31, 2001. Tr. 58. Plaintiff has a 12th grade education. She has past semi-skilled work experience as a sorter, bagger and assembler. Tr. 132.

///

2   - OPINION AND ORDER

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant

3  - OPINION AND ORDER

has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

ALJ's Findings

The ALJ relied on the five step sequential analysis as outlined above to determine disability. The ALJ made the following findings: first, plaintiff has not engaged in substantial gainful activity since July 1, 1997. Tr. 28. Second,

4   - OPINION AND ORDER

plaintiff has medically determinable severe impairments of ulcerative colitis, a pulmonary embolism, depression, arthritic changes of the lumbar spine at L5-S1, headaches, and fibromyalgia. Tr. 24. The ALJ also found the plaintiff experienced medical improvement effective January 31, 2002. Tr. 25. Third, plaintiff's medically determinable impairment of ulcerative colitis equaled a listed impairment between July 1, 1997, and January 31, 2002. The ALJ, however, found that since January 31, 2002, plaintiff's physical impairments do not meet or equal any listing. Id. Fourth, the ALJ found that effective January 31, 2002, plaintiff experienced medical improvement of her disabling impairment related to her ability to work. Tr. 29. Specifically, the ALJ found that plaintiff "had the capacity to return to her past relevant work as a restaurant worker." Tr. 29. The ALJ, therefore, did not consider step 5 since he found that "claimant's disability ceased on January 31, 2002, as a result of medical improvement" and that plaintiff could return to her prior occupation. Id.

Plaintiff's Allegations of Error

(1) Medical Improvement

The ALJ found that plaintiff had medically determinable severe impairments that equaled section 5.06 of Appendix 1, between July 1, 1997, and January 31, 2002. Tr. 24-25. The ALJ, however, also found that plaintiff experienced medical improvement effective January 31, 2002. Tr. 29. The termination of benefits due to medical improvement must rest on evidence that the individual's condition has improved. 20 C.F.R. §§ 404.1594, 416.994. While the plaintiff has the burden of showing initial

5    - OPINION AND ORDER

disability, the Agency has the burden of establishing medical improvement. This burden must be met with: (1) substantial evidence based on an affirmative showing of improvement, including changes in symptoms, signs or laboratory findings, and (2) evidence that the improvement results in an increase in functional capacity. Id.

Plaintiff's treating physician, Dr. Katja Daoud, evaluated plaintiff and found the necessary positive trigger points for a formal diagnosis of fibromyalgia. Tr. 883. The fibromyalgia diagnosis was affirmed by Dr. Brody and Nurse Practitioner O'Halloran in subsequent evaluations. Tr. 801, 856. The record shows that plaintiff continued to suffer from nausea, vomiting, and chronic diarrhea. Tr. 622, 820, 856, 866, 876, 895. Plaintiff also suffered from continuing pain complaints related to her diagnosis of fibromyalgia. Tr. 715, 796, 801, 805, 807-08, 811-12, 855-56, 862-63, 869, 876, 883-84, 888. I find no evidence that plaintiff's medical condition improved, and that plaintiff had regained the ability to return to work based on that medical improvement.

(2) Reliance on medical expert

The ALJ relied on the medical expert, Dr. Bigley, to reject the diagnosis of fibromyalgia and to find medical improvement. The ALJ may adopt medical expert testimony when the reasons for doing so are specific and legitimate, based on substantial evidence in the record. Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). The ALJ stated: "[T]he medical expert testified none of The claimant's impairments met or equaled any section in Appendix 1." Tr. 25. The medical expert, however, qualified his

6   - OPINION AND ORDER

opinion regarding plaintiff's colitis, her fibromyalgia, and her functional capacity, stating: "I'm not a gastroenterologist . . . I can't tell you what - how many people would come out with this [frequent loose stools]." Tr. 939. When the ALJ pressed for Dr. Bigley's opinion on the disabling effects of plaintiff's fibromyalgia, he reiterated, "I've told you I can't give you an answer." Tr. 941. Finally, the medical expert's opinion on plaintiff's ability to return to work was premised on assuming plaintiff's incredulity. Tr. 943.

The reviewing medical expert, who was neither a gastroenterologist nor a rheumatologist, provided a very limited basis for the ALJ to reject the opinions of the treating specialist and three other doctors. The ALJ lacked specific and legitimate reasons based on substantial evidence to adopt the medical expert's testimony. Roberts, 66 F.3d at 184.

(3) Plaintiff's fibromyalgia complaint

The ALJ rejected the diagnosis of fibromyalgia because Dr. Bigley found the diagnosis to be "both controverted and unsubstantiated by neutral control point testing." The ALJ then found that the fibromyalgia was not a severe impairment at step two by rejecting plaintiff's testimony and rejecting other medical evidence from treating physicians documenting her pain.

At step two, plaintiff has the burden to establish a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). To satisfy this burden, plaintiff must produce evidence establishing a medically determinable impairment. 42 U.S.C. §§ 43(d)(3), 1382c(a)(3)(D). When a medically determinable impairment exists, the ALJ must

7   - OPINION AND ORDER

then assess whether the impairment is "severe" within the meaning of the regulations. An impairment can only be found not severe where "the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

The Ninth Circuit has held that fibromyalgia is medically determinable. Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004). However, there are no clearly established tests for diagnosing this condition. Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869 (9th Cir. 2004). Moreover, the Ninth Circuit has held that requiring objective evidence for fibromyalgia amounts to clear error. Benecke, 379 F.3d at 594 ("The ALJ erred by effectively require[ing] 'objective' evidence for a disease that eludes such measurement)(internal quotation marks and citation omitted).

The record reflects that several of plaintiff's treatment providers opined that she suffered from fibromyalgia. Dr. Buhl first assessed plaintiff with "[m]ultiple myalgia" in March 2000. Tr. 717. In 2002, Dr. Lee opined that plaintiff's complaints were due to fibromyalgia, as opposed to the external manifestations of ulcerative colitis, which "one would assume . . . is now quiescent." Tr. 876. In a follow up evaluation, Dr. Lee's associate, Dr. Daoud, found multiple tender points and diagnosed fibromyalgia. Tr. 883, 888. Nurse Practitioner O'Halloran also found multiple tender points and treated plaintiff for fibromyalgia. Tr. 801, 855, 858, 863, 865. Then, again, in 2003, Dr. Brody reported "positive trigger points bilaterally throughout her body," and confirmed the diagnosis of

8   - OPINION AND ORDER

fibromyalgia. Tr. 856. In 2004, Dr. Conner again confirmed a diagnosis of fibromyalgia. Tr. 862. I find this evidence sufficient to establish a medically determinable condition. Brenecke, 379 F.3d at 594.

The ALJ concluded that plaintiff's fibromyalgia was not a medically determinable impairment. Tr. 26-27. However, the record reflects evidence that plaintiff suffers from symptoms characteristic of fibromyalgia. Tr. 715, 796, 801, 805, 807-08, 811-12, 855-56, 862-63, 869, 876, 883-84, 888. The ALJ's decision that fibromyalgia has no more than a minimal effect on plaintiff's ability to work is not supported by substantial evidence. See Webb, 433 F.3d at 686 "[A]n ALJ may find that a claimant lacks a medically severe impairment . . . only when [t]his conclusion is clearly established by medical evidence." Id. at 687.

(4) Plaintiff's Credibility

If the record contains no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony. Dodrill v. Shalala, 12 F.3d 915 (9th Cir. 1993). While an ALJ is not required to believe every allegation made by a plaintiff, the ALJ may not reject a plaintiff's statements simply because they are not fully supported by the medical evidence. Fair v. Bowen, 885 F.2d 597 (9th Cir. 1989). Specific findings are required to reject excess pain testimony. Id. The ALJ must consider plaintiff's subjective pain allegations where plaintiff produces objective medical evidence of an impairment that is reasonably likely to cause the symptoms alleged.

9    - OPINION AND ORDER

Brunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc). Where such evidence is produced, plaintiff's testimony cannot be rejected "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Id. at 345.

The ALJ relied on the consultative examination performed by Dr. Mason on April 17, 2002, to reject plaintiff's testimony. Tr. 622. Dr. Mason's note was pursuant to plaintiff's hospital release notes following her C-section and tubal ligation surgery. Tr. 622-23, 625-26. Dr. Mason's note does not provide substantial evidence that plaintiff no longer suffers from the effects of ulcerative colitis and fibromyalgia. The record, however, indicates that plaintiff continued to suffer from nausea, vomiting, and chronic diarrhea with up to 20 bowel movements per day. Tr. 622, 820, 856, 866, 876, 895. The record also indicates that plaintiff suffered from these symptoms related to her fibromyalgia complaint. Tr. 715, 796, 801, 805, 807-08, 811-12, 855-56, 862-63, 869, 876, 883-84, 888.

The ALJ further rejected plaintiff's pain testimony because Dr. Mason's note "revealed she was doing well in pain control after her pregnancy, which was uneventful." Tr. 26, 622-23. This note was made on the day of her C-section and tubal ligation surgery. I find this note does not account for any pain plaintiff might have suffered following her surgery. Further, between 1996 and 2002, the record supports multiple visits to doctors by plaintiff to treat her migraines, which were often associated with pain, nausea, and vomiting. Tr. 715-16, 720, 728, 810, 866. Further, the record notes plaintiff's depression.

10   - OPINION AND ORDER

1   Tr. 99, 376, 728, 740, 837, 853, 856.

2   Finally, the ALJ rejects plaintiff's testimony based on plaintiff's activities of daily living. Fibromyalgia is a condition marked by chronic rather than acute pain. Brenecke, 379 F.3d at 590. "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility." Id. at 594. Plaintiff could drive and take classes. Although she testified that she required assistance to manager her children and household, and stated that she can no longer drive due to her medications. Tr. 521, 894, 917, 921.

Moreover, I find that plaintiff established the existence of severe impairments that could reasonably likely cause the alleged symptoms. Bunnell, 947 F.2d at 345-46. Common symptoms of fibromyalgia include "generalized pain and multiple painful regions . . . Sleep disturbance, fatigue, and stiffness." Jordan, 370 F.3d at 872. Plaintiff's records establish that she suffers from these types of symptoms. Tr. 715, 796, 801, 805, 807-08, 811-12, 855-56, 862-63, 869, 876, 883-84, 888. Therefore, I find that plaintiff presented objective medical evidence of an impairment that is reasonably likely to cause the symptoms she complained of. The ALJ failed to adequately consider plaintiff's subjective pain allegations in light of this fact. Bunnell, 947 F.2d at 345-46. I find no affirmative evidence that plaintiff is malingering, and therefore find that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony.

///

11   - OPINION AND ORDER

(5) Treating and examining physicians

The ALJ rejected the opinion of Dr. Daoud (a specialist in the field of rheumatology) because "This doctor did not do any control point testing[.]"  Tr. 26.  Even if contradicted by another doctor, the opinion of a specialist, examining physician can only be rejected for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  The ALJ's reasons for rejecting Dr. Daoud's opinion were not legitimate, nor were they supported by substantial evidence.

Further, Dr. Daoud's opinion was not contrary to other medical opinions in the record.  Dr. Mason, a gastroenterologist, was the only physician to suggest that plaintiff's complaints were the external manifestations of ulcerative colitis.  Tr. 400.  In contrast, Drs. Brody, Lee, Daoud, Buhl, and Conner in addition to Nurse Practitioner O'Halloran, each assessed plaintiff and found her complaints the result of multiple myalgias.  Tr. 715, 796, 801, 805, 807-08, 811-12, 855-56, 862-63, 869, 876, 883-84, 888.  I find that Dr. Daoud's assessment and opinion were not controverted by other medical opinion(s).

Further, the ALJ's requirement of "control point testing" in order to diagnose fibromyalgia was error.  Tr. 26.  The Act does not require control point testing.  The Ninth Circuit allows a physician's interpretation of subjective responses to multiple tender points as sufficient to establish a medically determinable condition.  Benecke, 379 F.3d at 594.

Finally, the ALJ failed to address the fibromyalgia diagnosis by the other treating physicians, including Dr. Buhl,

12   - OPINION AND ORDER

Dr. Brody, and Dr. Connor. Tr. 21-29. Even if this court assumes that the ALJ correctly rejected Dr. Daoud's opinion (which it does not) for that of the medical expert, nevertheless, the ALJ failed to adequately dismiss the fibromyalgia diagnosis by three other examining physicians.

## CONCLUSION

For these reasons, the Commissioner's decision is not based on substantial evidence, and is therefore, reversed and remanded for payment of benefits.

IT IS SO ORDERED.

Dated this __18__ day of December 2006.


/s/ Ann Aiken
Ann Aiken
United States District Judge

13   - OPINION AND ORDER